UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

M.V., individually and on behalf of, G.V., a Student
with a Disability,

                Plaintiff,

v.                                                       1:11-CV-00701
                                                          (GTS/DRH)

SHENENDEHOWA CENT. SCH. DIST.,
                            Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICES OF H. JEFFREY MARCUS, P.C.      H. JEFFERY MARCUS, ESQ.
  Counsel for Plaintiff
5888 Main Street
Williamsville, NY 14221

FERRARA, FIORENZA, LARRISON, BARRETT       SUSAN T. JOHNS, ESQ.
& REITZ, P.C.
  Counsel for Defendant
5010 Campuswood Drive
East Syracuse, NY 13057

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this civil rights action filed by M.V. ("Plaintiff") individually and on behalf of G.V. (a student with a disability) against Shenendehowa Central School District ("Defendant" or "the District") pursuant to the Individuals with Disabilities Education Act and Article 89 of New York Education Law (and their promulgating regulations), is Defendant's motion for summary judgment (Dkt. No. 15), and Plaintiff's cross-motion for summary judgment (Dkt. No. 16). For the reasons set forth below, Defendant's motion is granted, Plaintiff's cross-motion is denied, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint claims that, between approximately April 2010 and approximately February 2011, in New York State, Defendant violated the right of Plaintiff's son, G.V., to a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA") and Article 89 of New York Education Law (and their promulgating regulations), by imposing a District-wide cap of $1,800 on a previously approved Independent Educational Evaluation ("IEE") for G.V., who suffers from a speech or language impairment and had an Individualized Education Program ("IEP") from the District, even though that IEE cost an additional $500 to $700, which Plaintiff was unable to pay. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) As relief for this alleged violation, Plaintiff's Complaint requests (1) declaratory and injunctive relief aimed at directing Defendant to fund an IEE of G.V. at the true and total cost, a cost that exceeds the $1,800 limit imposed by Defendant, and (2) attorneys fees and costs due to Plaintiff as a prevailing party on her IDEA claim. (*Id.*) Familiarity with the particular nature of the claim, supporting factual allegations and requested relief in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Undisputed Material Facts

After carefully considering the record evidence presented by the parties on their motions, the Court finds that the following material facts are undisputed.

### 1. Events Occurring Before 2009-2010 School Year

Prior to September 2009, Plaintiff's son was parentally enrolled at the St. Ambrose School, a nonpublic school located within the North Colonie Central School District, for at least the 2008-2009 school year. During the time that Plaintiff's son was in attendance at the St. Ambrose School, the North Colonie Central School District developed his Individualized Education Services Program ("IESP"). (Dkt. No. 12, Attach. 4, at 24-32.)

### 2. Events Occurring During 2009-2010 School Year

During the 2009-2010 school year, Plaintiff's son was a minor child who qualified under the IDEA and Article 89 of the New York Education Law as a student with a disability.

In September 2009, Plaintiff enrolled her son in the District's schools for the 2009-2010 school year. On September 17, 2009, and November 24, 2009, the District's Committee on Special Education ("CSE") met to prepare an IEP for Plaintiff's son for the 2009-2010 school year.

On April 15, 2010, the District's CSE met to conduct an annual review of Plaintiff's son's IEP and to develop the IEP that was to be in effect during the 2010-2011 school year. At the CSE meeting on April 15, 2010, Plaintiff requested that the District pay for an IEE by Dr. Alison Curley in order to, among other things, assess her child's progress in academics. (Dkt. No. 12, Attach. 5, at 10-22, 63-64, 114-16; Dkt. No. 12, Attach. 3, at 16.) At the CSE meeting on April 15, 2010, the District approved the IEE request up to an $1,800 limit.

On January 12, 2010, the District adopted Administrative Regulation 7680R stating the criteria for IEEs. (Dkt. No. 12, Attach. 3, at 17, 23; Dkt. No. 12, Attach. 4, at 16-18.) The regulation specifies $1,800 as the amount over which the District "may refuse to pay" for an

IEE. (Dkt. No. 12, Attach. 3, at 17-18; Dkt. No. 12, Attach. 4, at 17.) In addition, the regulation provides, among other things, that, if a parent desires an IEE outside of the District's criteria, the parent has the "opportunity to demonstrate that their child's unique circumstances justify an IEE outside of the District's criteria. If the total cost of an IEE obtained by the parent . . . exceeds the District's cost criteria and there is no justification for the excess cost, the IEE will be publicly funded only to the extent of the District's maximum allowable charge." (Dkt. No. 12, Attach. 4, at 17.)

By letter dated April 19, 2010, Plaintiff stated, "As you know from my participation in the CSE meeting, I disagree/d with the Draft IEP 2010-11 and I also disagree/d with the recommendations on that Draft IEP for next school year." (Dkt. No. 12, Attach. 5, at 63.)

After April 22, 2010, Plaintiff reported that she had learned that an evaluation by Dr. Curley would cost in excess of $1,800. Plaintiff did not obtain an evaluation by Dr. Curley.

### 3. Plaintiff's Due Process Hearing and Appeal

By letter dated July 8, 2010, Plaintiff (by her attorneys) filed a Request for a Due Process Hearing. The Request complained that the District had approved Plaintiff's request for an IEE by Dr. Curley but capped its payment at $1,800, when the estimate full cost of the evaluation exceeded that amount. The Request did not allege that Plaintiff disagreed with an evaluation obtained by the District.

On or about July 14, 2010, the District provided Plaintiff with a written list of low-cost independent evaluators. (Dkt. No. 12, Attach. 5, at 99, 113 [attaching letter and list]; Dkt. No. 12, Attach. 5, at 115 [attaching Paragraph 11 of Plaintiff's Affidavit].) On that list was, among other information, the names of six clinics (public and private) qualified to perform independent

4

evaluations for children suspected of having disabilities.  (*Id*.)  More specifically, these six clinics were as follows: (1) the Saratoga Mental Health Clinic; (2) the Child Guidance and Family Psychiatric Clinic; (3) the Child Research & Study Center; (4) the Child Guidance Center; (5) the Sunnyview Hospital & Rehab. Center; and (6) Four Winds–Saratoga.  (Dkt. No. 12, Attach. 5, at 113 [attaching list].)

No admissible record evidence exists that, between July 14, 2010, and September 2010, Plaintiff attempted to call any of those clinics.  (*See, e.g.,* Dkt. No. 12, Attach. 5, at 115 [attaching Paragraphs 13 and 14 of Plaintiff's Affidavit, stating, on September 14, 2010, that she "recently" called those clinics, and that she made telephone calls in "September of 2010"].)[1]  Finally, while the record contains evidence that, as of July 9, 2010, the first and fifth of the six above-listed clinics were not performing neuropsychological evaluations, the record does not contain admissible record evidence that the remaining four clinics were not doing so.  (Dkt. No. 12, Attach. 5, at 97-98.)

On September 14, 2010, the Due Process Hearing was conducted before Impartial Hearing Officer Jerome Schad (the "IHO").

At the Due Process Hearing, evidence was presented that, among other things, other psychologists and neuropsychologists, within the geographical location of the parties, were willing to conduct an IEE for no more than $1,800.  (Dkt. No. 12, Attach. 5, at 32-46.)  For example, between approximately September 12, 2007, and August 18, 2010, there were at least six psychologists and neuropsychologists, within the geographical location of the parties, who

---

[1] Indeed, no admissible record evidence exists that any of the six doctors Plaintiff later called in September 2010 worked (at that time) at any of the six above-listed clinics.  (Dkt. No. 12, Attach. 5, at 115 [attaching Paragraphs 13 through 19 of Plaintiff's Affidavit].)

conducted an IEE for no more than $1,800 (i.e., Drs. Jeffrey H. Fox, Melinda S. Tanzman, Andrew M. Hess, Alan J. Barnett, and Gerald A. Fischman, and Paula Zuffante). (Dkt. No. 12, Attach. 5, at 33-40, 42-43, 45-46; Dkt. No. 12, Attach. 5, at 23; *see also* Dkt. No. 12, Attach. 5, at 83 [attaching Paragraphs "14" and "17" of Affidavit of Mary Alice Cole dated Sept. 9, 2010]; Dkt. No. 12, Attach. 3, at 12.)[2]

On November 22, 2012, the IHO issued a decision. In his decision, the IHO found that Plaintiff's request for an IEE was not supported by a disagreement with a District evaluation. The IHO also found that Plaintiff's requested for an evaluation by Dr. Curley and that the District agreed to the evaluation with "the equivalent of a counter-offer" to pay up to $1,800.

Plaintiff subsequently appealed the IHO's decision to the New York State Review Officer ("SRO").

On February 23, 2011, the SRO issue a decision. In his decision, he upheld the IHO's decision and dismissed Plaintiff's appeal.

### 4. Events Occurring During 2010-2011 School Year

On or about August 27, 2010, Plaintiff withdrew G.V. from the District's schools for the 2010-2011 school year. Plaintiff enrolled G.V. at a nonpublic school located within the Saratoga City School District for at least the 2010-2011 school year.

---

[2] The Court notes that none of the record evidence cited by Plaintiff in Paragraphs 43-63 of her Rule 7.1 Response–and none of the record evidence *sua sponte* reviewed by the Court–contradicts the above-stated fact. For example, Plaintiff's evidence that she was orally informed by Dr. Paula Zuffante's colleague (Dr. Andrew S. Labarge) in September 2011 that evaluations typically cost between $1,7500 and $2,400 in no way means they could not cost less than $1,800. Moreover, that evidence does not contradict the fact that, during the five months before September 2011 (when G.V.'s IEE should have been conducted), Dr. Zuffante twice conducted IEEs for clients for less than $1,800. (Dkt. No. 12, Attach. 5, at 45-46.)

On June 21, 2011, the Saratoga City School District's CSE met regarding Plaintiff's son's eligibility to receive special education services. (Dkt. No. 15, Attach. 3, at 3, 6-7.) At that time, the Chairperson of the Saratoga City School District's CSE recommended that Plaintiff's son be "declassified" because he no longer qualified as a student with a disability under the IDEA. (*Id*.; Dkt. No. 16, Attach. 2, at 3 [attaching Paragraph 15 of Plaintiff's Affidavit].) On August 12, 2011, Plaintiff submitted a letter by fax to the Chairperson disagreeing with the reclassification. (Dkt. No. 16, Attach. 2, at 3 [attaching Paragraph 15 of Plaintiff's Affidavit]; Dkt. No. 16, Attach. 2, at 21-22 [attaching copy of letter].) Nonetheless, on August 16, 2011, the Chairperson informed Plaintiff in writing that recommendation had been adopted by the Saratoga City School District's CSE. (Dkt. No. 15, Attach. 3, at 6-7.)

### C. Parties' Briefing on Current Motions

#### 1. Defendant's Memorandum of Law in Chief

Generally, in its memorandum of law in chief, Defendant asserts the following two alternative arguments. (*See generally* Dkt. No. 15, Attach. 4 [Def.'s Memo. of Law].)

First, Defendant argues that Plaintiff's claim under the IDEA is without merit because (a) a pre-requisite for entitlement to a publicly funded IEE under the IDEA is disagreement with an evaluation obtained by a district, and both the IHO and SRO correctly determined that Plaintiff's disagreement with a proposed IEP is not the equivalent of a disagreement with an evaluation obtained by the District, and (b) Plaintiff's failure to disagree with an evaluation obtained by the District relieved the District of a duty to promptly initiate an impartial hearing pursuant to 34 C.F.R. § 300.502(b)(2)(i). (*Id*. at 10-13 [attaching pages "5" through "8" of Def.'s Memo. of Law].)

7

Second, Defendant argues that, in any event, Plaintiff's claim under the IDEA (which obligates a school district to review the IEP of each child with a disability attending its schools on an annual basis) is moot because (a) any IEP developed for G.V. for the 2010-2011 school year has expired, (b) G.V. no longer attends school in the District, and (c) G.V.'s new school district has "declassified" him and determined that he is no longer a student with a disability under the IDEA (and Plaintiff did not subsequently reverse or even contest that determination), and (d) this is not a situation that falls into the narrow "capable of repetition yet evading review" exception to the mootness doctrine (given that there is no reasonable expectation that G.V. will be subjected to the same action by Defendant again). (*Id*. at 14-15 [attaching pages "9" and "10" of Def.'s Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in Plaintiff's response to Defendant's motion for summary judgment, and in her support of her cross-motion for summary judgment, Plaintiff asserts the following two arguments. (*See generally* Dkt. No. 16, Attach. 4 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues that the District should be ordered to pay the entire cost of the IEE because (a) the District should be estopped from denying Plaintiff's right to an IEE, (b) Plaintiff adequately disagreed with the District evaluation, (c) the District failed to follow proper procedures when refusing to pay the entire cost of the evaluation, (d) the District's attempt to limit payment violates the plain, unambiguous language of the regulations, (e) the District failed to establish the reasonableness of the cap, and (f) the cost of the requested evaluation (by Dr. Curley) is reasonable. (*Id*. at 6-18 [attaching pages "6" through "18" of Plf.'s Opp'n Memo. of Law].)

Second, Plaintiff argues that the matter is not moot because (a) even though the 2010-2011 school year has passed, Plaintiff filed the hearing request that gave rise to this action during that school year, rendering the 2010-2011 IEP the pendency IEP throughout this litigation, pursuant to 34 C.F.R. § 300.518, (b) even though G.V. is currently placed in a neighboring district, Plaintiff still retains (as a resident of the District) an ongoing right to the District evaluation, which has yet to be completed, (c) the fact that G.V.'s current school district has determined that he is no longer a student with a disability under the IDEA is of no consequence given that it is undisputed that G.V. was a student with a student with a disability under the IDEA when he commenced the hearing that gave rise to this action (and, in any event, Plaintiff "strongly disagreed" with the determination of G.V.'s current school district that he is no longer a student with a disability under the IDEA). (*Id*. at 18-19 [attaching pages "18" and "19" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant asserts the following six arguments. (*See generally* Dkt. No. 19, Attach. 1 [Def.'s Reply Memo. of Law].)

First, Defendant argues that, pursuant to *Schaffer v. West*, 546 U.S. 49 (2005), Plaintiff has the burden to show that the SRO's decision should be overturned, because New York did not, when it amended Section 4404(1)(c) of the New York Education Law in 2007, change the ordinary default rule governing the review of an impartial hearing officer's decision. (*Id*. at 4 [attaching page "1" of Def.'s Reply Memo. of Law].)

Second, Defendant argues that substantial deference is due to the IHO's and SRO's determination that Plaintiff did not disagree with a District evaluation, because that issue is one

9

of fact not statutory interpretation. (*Id*. at 4-5 [attaching pages "1" and "2" of Def.'s Reply Memo. of Law].)

Third, Defendant argues that Plaintiff is not entitled to an IEE, because (1) at the impartial hearing she actually relied on the District's agreement to pay for an evaluation as the sole basis for her claimed entitlement to an evaluation costing more than $1,800, (2) an IEP is not an "evaluation" under the applicable regulations (and thus Plaintiff's disagreement with an IEP is not disagreement with an evaluation obtained by the District). (*Id*. at 5-8 [attaching pages "2" through "5" of Def.'s Reply Memo. of Law].)

Fourth, Defendant argues that the IDEA procedural safeguards do not apply because, even if Plaintiff had been entitled to an IEE at public expense pursuant to the IDEA, (a) the District need provide information about where an IEE may be obtained only when parents request that IEE (pursuant to 34 C.F.R. § 300.502[a][2]; 8 N.Y.C.R.R. § 200.5[g][1][i]), (b) here, Plaintiff never requested, before the impartial hearing, an IEE other than one by Dr. Curley, (c) the District need provide information in writing about free and low-cost legal and other relevant services only when parents request an impartial hearing (pursuant to 8 N.Y.C.R.R. § 200.5[j][1][iii]), (d) here, after Plaintiff requested an impartial hearing, the District provided her with a written list of independent evaluators, and (e) Plaintiff has not pursued an evaluation by psychologists or neuropsychologists charging less than $1,800 (despite evidence of the existence of such psychologists or neuropsychologists). (*Id*. at 8-9 [attaching pages "5" and "6" of Def.'s Reply Memo. of Law].)

Fifth, Defendant argues that the mootness of Plaintiff's claims is not negated by the IDEA's "pendency" provision, because (a) Plaintiff severed any pendency when she removed

G.V. from the District's schools in September 2010, (b) the school year for the IEP that Plaintiff sought (i.e., 2010-2011) is over, (c) Plaintiff's son was "declassified" by his new school district (after seeking special education services in that district, and fully participating in that process), and (d) there is no reasonable expectation that Plaintiff's son will be subject to the District's 2010-2011 IEP. (*Id*. at 9-10 [attaching pages "6" and "7" of Def.'s Reply Memo. of Law].)

Sixth, and finally, Defendant argues that the District's criteria do not *deny* an IEE, because (a) the District is permitted by law to establish a maximum allowable cost for an IEE, (b) $1,800 is a reasonable allocation for an IEE given the fact that $1,800 was the highest cost for an independent psycho-educational evaluation billed to the District between January 12, 2007, and January 12, 2010, and the fact that numerous qualified evaluators charge less than $1,800, and (c) pursuant to the District's regulations, the cap of $1,800 may be exceeded in the case of exceptional or unique circumstances, which Plaintiff never presented to the District. (*Id*. at 10-13 [attaching pages "7" through "10" of Def.'s Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing a Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motion for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

B. **Legal Standards Governing Plaintiff's Claim**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standard governing Plaintiff's claims in this action, the Court will not recite, in their entirety, that legal standard in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* Dkt. No. 15, Attach. 4 [Def.'s Memo. of Law]; Dkt. No. 16, Attach. 4 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 19 [Def.'s Reply Memo. of Law].)

## III. ANALYSIS

After carefully considering the parties' arguments in light of the undisputed material facts presented by the current record, the Court is persuaded that Plaintiff's claim under the IDEA is without merit for each of the numerous alternative reasons offered by Defendant in its memorandum of law in chief and reply memorandum of law: (1) Plaintiff's failure to disagree with an evaluation obtained by the District relieved the District of a duty to promptly initiate an impartial hearing; (2) Defendant did not violate any procedural safeguards at that hearing; (3) Plaintiff has failed to meet her burden of showing that the SRO's decision should be overturned; (4) the District's General Cap of $1,800 on IEEs is reasonable and, in any event, it may be exceeded in the case of exceptional or unique circumstances (which Plaintiff never presented to the District); and (5) Plaintiff's claim is moot. (Dkt. No. 15, Attach. 4 at 10-15 [attaching pages "5" through "10" of Def.'s Memo. of Law]; Dkt. No. 19, Attach. 1 at 4-13 [attaching pages "1" through "10" of Def.'s Reply Memo. of Law].) *See also, supra,* Part I.C.1. and I.C.3. of this Decision and Order (summarizing those reasons).

The Court would add only the following analysis.

With regard to Defendant's argument that the District's General Cap of $1,800 on IEEs is reasonable, the Court notes that it is undisputed, based on the current record, that, between at least July 14, 2010, and August 18, 2010, in the parties' geographical area, there existed several psychologists or neuropsychologists willing to perform IEEs for less than $1,800, whom Plaintiff never attempted to call (due to an apparent desire to obtain an IEE only from Dr. Curley). *See, supra,* Part I.B.3 of this Decision and Order. The fact that Plaintiff perfunctorily attempted to contact (without success) various other doctors after that time period does not render the $1,800 cap unreasonable, nor does it constitute unique circumstances justifying an exception to the general cap.

With regard to Defendant's mootness argument, the Court acknowledges the case cited by Plaintiff in support of her argument that, even though G.V. is currently placed in a neighboring district, Plaintiff still retains (as a resident of the District) an ongoing right to the District evaluation, which has yet to be completed. *See J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp.2d 635, 659 (S.D.N.Y. 2011) ("[T]he IDEA and New York State law do not, at least in the circumstances of this case, divest a district in which a child's parents reside of its obligations to provide the child a FAPE even though the child attends private school outside the district."). The Court also acknowledges that at least some admissible record evidence exists from which a rational factfinder could conclude that Plaintiff retained residency in the District during (and after) that time. (Dkt. No. 16, Attach. 2, at 1 [attaching Paragraph 2 of Plaintiff's Affidavit].)

However, the Court finds that *Scarsdale* is distinguishable from this case. For the sake of brevity, the Court will not linger on fact that *Scarsdale* was limited to the "circumstances of [the]

13

case," which involved (1) a former school district CSE that failed to convene to evaluate the student as a child with a disability and (2) parents who partially cooperated with the District in finding an appropriate placement for their child. *Scarsdale*, 826 F. Supp.2d at 659, 675-76. Neither of those facts are present in this case. Rather, in this case, Defendant agreed to pay for an IEE, and Plaintiff refused to pursue an IEE from anyone other than Dr. Curley (and instead placed the child in a private school outside of the District).[3]

More important is the fact that the plaintiff in *Scarsdale* sought *tuition reimbursement* for her senior year of high school at a private school (from 2008-2009). *Id*. at 638-56. As a result, the controversy in *Scarsdale* remained live when the Southern District issued its decision on November 18, 2011. Here, Plaintiff seeks no such reimbursement, but merely (1) declaratory and injunctive relief aimed at directing Defendant to fund an IEE fund an IEE of G.V. at the true and total cost, a cost that exceeds the $1,800 limit imposed by Defendant, and (2) attorneys fees and costs due to Plaintiff as a prevailing party on her IDEA claim. (*Id*.) The problem is that it is undisputed that Plaintiff ceased being classified as a child with a disability in the summer of 2011. *See, supra,* Part I.B.4. of this Decision and Order. As a result, Defendant has been relieved of its duty to provide G.V. with a FAPE under the IDEA. *See* 20 U.S.C. § 1412(a)(1)(A) (2005) (requiring states receiving federal funds provide a "free appropriate public education" to "all children with disabilities").

---

[3] *Cf.* 20 U.S.C. § 1412(a)(10)(C)(i) ("[The IDEA] does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.").

This holding is supported by the analogous case of *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, in which the Second Circuit held that the parents' appeal from a district court decision granting summary judgment for a school district (in a civil rights action challenging the district's refusal to fund on-site special education services for the student at private parochial school) was rendered moot by the fact that the student had been withdrawn from school after receiving an IEP diploma. *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 117-23 (2d Cir. 2001). In so holding, the Second Circuit explained, "As the student's interest evaporates, so does the requisite case or controversy." *Russman*, 260 F.3d at 119.

This holding is also supported by the analogous case of *M.L. v. El Paso Indep. Sch. Dist.*, in which the Fifth Circuit affirmed a district court finding that a parent's claim for speech services for her child under the IDEA was moot because her child was no longer speech disabled and therefore "his speech-IEP is no longer applicable and he no longer requires any speech therapy services." *M.L. v. El Paso Independent Sch. Dist.*, 369 F. App'x 573, 576 & n.4 (5th Cir. 2010). In so holding, the Fifth Circuit noted that plaintiff "had the opportunity to contest th[e] fact [that her child was no longer speech disabled] in the district court," but, "instead of contesting it, [plaintiff] simply remained silent–[she] offered no . . . evidence to contradict EPISD's assertion that [her son] was no longer speech disabled." *M.L.,* 369 F. App'x at 576.

This holding is also supported by the analogous case of *J.P.E.H. ex rel. Campbell v. Hooksett Sch. Dist.*, in which the District of New Hampshire held that, where a plaintiff files an action under the IDEA claiming the denial of a FAPE by a public school district and subsequently enrolls in an out-of-district private school (and declares that she will not send the student back to the public school district), the plaintiff's tuition-reimbursement claim can go

15

forward, but the plaintiff's claims for "IDEA remedies" (specifically, for an outside evaluation of the student and the provision of future services in a procedurally correct manner) must be dismissed. *J.P.E.H. ex rel. Campbell v. Hooksett Sch. Dist.*, 07-CV-0276, 2008 WL 4681827, at *2 (D. N.H. Oct. 22, 2008). As explained by the District of New Hampshire, the "changed circumstances . . . eliminates any possibility of [the public school district's] being able to provide the IDEA remedies plaintiff seeks." *J.P.E.H. ex rel. Campbell,* 2008 WL 4681827, at *2.

Finally, a few words are appropriate regarding Defendant's argument that this is not a situation that falls into the narrow "capable of repetition yet evading review" exception to the mootness doctrine. *See, supra,* Part I.C.1. of this Decision and Order. In her opposition memorandum of law, Plaintiff has failed to oppose this legal argument. *See, supra,* Part I.C.2. of this Decision and Order. In this District (as in many districts), when a non-movant fails to oppose a legal argument contained in a movant's memorandum of law, the movant's burden with regard to that legal argument has been lightened such that, in order to succeed with regard to that legal argument, he need only show the facial merit of the legal argument.[4] Here, at the very least, Defendant has met that modest threshold burden.

---

[4] *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *see, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); *cf. Niles v. Nelson*, 72 F. Supp.2d 13, 22 (N.D.N.Y.1999) (McAvoy, C.J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *Frink Am., Inc. v. Champion Road Mach., Ltd.*, 48 F. Supp.2d 198, 209 (N.D.N.Y.1999) (McAvoy, C.J.) ("Plaintiff does not address these claims in his opposition papers, leading the Court to conclude that it has abandoned them.") (collecting cases); *see also Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n. 108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

Even if the Court were to subject Defendant's legal argument to the more-rigorous scrutiny appropriate for contested legal arguments, the Court would be persuaded by the legal argument. Granted, Plaintiff has proffered evidence in support of her assertion that she "strongly disagreed" with the recommendation of the Chairperson of the Saratoga City School District's CSE that her son be declassified. *See, supra,* Part I.B.4. of this Decision and Order. The problem is that this evidence *pre-dates* the adoption of the Superintendent's recommendation by the Saratoga City School District's CSE. *Id.* In any event, even if Plaintiff had adduced evidence that she subsequently disagreed with that adoption on the record, Plaintiff has adduced no evidence that any such disagreement stands a reasonable chance of reversing the declassification, or even that she would return G.V. to the District's schools upon such a reversal.

For each of these numerous alternative reasons, Defendants' motion for summary judgment is granted, Plaintiff's cross-motion for summary judgment is denied as moot and/or unsupported by a showing of cause, and Plaintiff's Complaint is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**. The clerk is directed to enter judgment in favor of the Defendant and close this case.

Dated: March 7, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge